**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| KERR MACHINE CO., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 6:20-CV-200-ADA |
| VULCAN INDUSTRIAL HOLDINGS, LLC, VULCAN ENERGY SERVICES, LLC, and CIZION, LLC d/b/a VULCAN INDUSTRIAL MANUFACTURING, | JURY TRIAL DEMANDED |
| Defendant. | |

<u>Plaintiff's Responsive Claim Construction Brief</u>

Table of Contents

I. **"Tubular Sleeve"** ........................................................................................................ 1

A. Vulcan's Inclusion of "Stuffing Box" in its Construction is at Odds With the Case Law. ...................................................................................................................... 1

B. Vulcan's "substantially Cylinder-shaped" Language is Not Supported by the Specification as a Whole and should be rejected. ............................................... 2

II. **"Endless Groove"** ..................................................................................................... 5

A. Vulcan's Proposed Construction Contains Improper Limitations ........................ 5

B. Vulcan's New Indefiniteness Argument Fails. .................................................... 7

III. **"Therethrough"** ...................................................................................................... 8

IV. **"Within the Sleeve"** .............................................................................................. 13

V. **"The seal is engaged with the outer surface of the sleeve"** ....................................... 16

VI. **"Seal"** ..................................................................................................................... 17

VII. **"Closure Element"** ................................................................................................. 18

VIII. **"Fluid end assembly"** ............................................................................................ 20

**Conclusion** ......................................................................................................................... 20

In accordance with the Court's Agreed Scheduling Order (Dkt. 34), Plaintiff Kerr Machine Company ("Kerr"), submits this Responsive Claim Construction Brief to rebut the arguments made in Defendants' Opening Brief ("Defs.' Brief") regarding disputed claim terms in U.S. Patent No. 10,591,070 ("the '070 Patent"), attached as Exhibit 1.

Vulcan's constructions are a mix of unnecessary definitions to overwhelm the jury and blatant departures from the evidence driven by Vulcan's prior art strategy. Vulcan's resorts to misleading interpretations of ambiguous portions of the prosecution history in order argue that Kerr somehow *unambiguously* adopted Vulcan's proposed constructions. Kerr did no such thing. In a few instances, Vulcan even argues a term should just be deemed indefinite if the Court does not give Vulcan the construction it wants. Ultimately, a proper reading of the '070 specification and the prosecution history show that Vulcan's proposed constructions are flat wrong.

## I.     "Tubular Sleeve"

| Claims | Kerr's Proposed Construction | Defendants' Proposed Construction |
|--------|------------------------------|-----------------------------------|
| 1, 6 | "open or hollow primarily cylindrical enclosure" | "open, substantially cylindrical-shaped stuffing box sleeve" |

### A.   Vulcan's Inclusion of "Stuffing Box" in its Construction is at Odds With the Case Law.

Vulcan's inclusion of "stuffing box" in its proposed construction should be rejected. Vulcan basis for including "stuffing box" is the number of times the specification uses the phrase. Vulcan Brief at 6 ("[T]he '070 Patent specification describes a 'stuffing box sleeve' nineteen times…"). However, Vulcan's basis for limiting "tubular sleeve" to a stuffing box is blatantly at odds with Federal Circuit case law.

In *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012), defendant Sony tried to argue the specification's repeated use of a word in reference to embodiments amounted to a disavowal of claim scope and lexicographic choice by the inventor. *Id.* at 1367 ("As

1

Sony argues, the specification repeatedly uses the term 'attached' in reference to embodiments where the actuators are 'attached to [an] outer side.'"). The court recognized that to act as its own lexicographer, a patentee must do more than "simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must clearly express an intent to redefine the term." *Id.* at 1365 (internal marks omitted). Regarding disavowal, the court explained that "the standard for disavowal of claim scope is similarly exacting" and that "[i]t is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation." *Id.* at 1366. The court ultimately rejected Sony's argument and held that repeated use of a word in reference to embodiments "does not rise to the level of either lexicography or disavowal" of claim scope. *Id.* at 1367.

This Court' should reject Vulcan's inclusion of "stuffing box" as unsupported by the evidence.

     B.  <u>Vulcan's "substantially Cylinder-shaped" Language is Not Supported by the Specification as a Whole and Should be Rejected.</u>

Vulcan urges the Court to construe "tubular sleeve" to mean an "open, substantially cylinder-shaped 'stuffing box' sleeve." Vulcan's construction attempts to erase the specification's express distinction between the invention's cylindrical tubular sleeve and a conical sleeve. In Vulcan's petition for post-grant review filings before the PTAB, Vulcan improperly relies upon irrelevant art featuring conical sleeves. Exh. 2. Vulcan will no doubt argue here these conical sleeves are "substantially cylindrical." While the specification itself draws a hard line between cylindrical and conical shapes, and further describes every embodiment as cylindrical in some fashion, it describes a *single* embodiment as "substantially" cylindrical. *Compare* Exh. 1 at 11:40-41 ("FIG. 16 also depicts employing the open-cylinder-shaped stuffing box sleeve…") *with* Exh.

1 at 11:53-56 ("In yet other contemplated embodiments the stuffing box sleeve 254 can be modified to a construction combining a substantially cylindrical-shaped stuffing box…").

Rather than read the specification as a whole, as a POSITA would, Vulcan cherry picks a **single** embodiment reference to define the entire claim. With the specification describing a single embodiment as "substantially cylindrical" and all others as simply "cylindrical" or "a cylinder," a POSITA would understand the "tubular sleeve" to be *primarily* cylindrical. *See ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368, 1375 (Fed. Cir. 2009) ("Indeed, the court should focus on how such a person would understand the claim term **after reading the entire patent**.") (emphasis added).

Vulcan tries to make up for its lack of support by mischaracterizing Fig. 16. Vulcan states that the shape of the tubular sleeve is "tapered," pointing at FIG. 16. Any POSITA looking at FIG. 16 will readily see that the sleeve 254 comprises two separate perfectly cylindrical sections of different diameters, as opposed to "taper," which means becoming "***progressively smaller*** toward one end." *Taper*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/taper (Last accessed 28 Oct. 2020). Yet again, Vulcan shows its proposed construction is driven by its own prior art strategy rather than what is actually in the '070 patent. This Court should reject Vulcan's attempt to sweep in irrelevant art by broadening "tubular sleeve" beyond what a POSITA would understand the term to mean.

Instead of using Vulcan's flawed construction, this Court should construe *"tubular sleeve"* as an open or hollow primarily cylindrical enclosure. This is similar to Vulcan's proposed construction, except that it does not (1) improperly limit the purpose or function to only a stuffing box sleeve or (2) alter the invention in an attempt to make relevant otherwise *irrelevant* prior art.

The ordinary meaning of "tubular" is having the form of or consisting of a tube, which in turn is defined by Merriam-Webster as "a hollow elongated cylinder." *Tube*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/tube (Last accessed 13 Oct. 2020). The ordinary meaning of "sleeve," in the context used in the specification, is a tubular part designed to fit over another part. *See Sleeve*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/sleeve (Last accessed 13 Oct. 2020) (defining "sleeve" as something "designed to fit over another part"). Thus, a person of ordinary skill in the art ("POSITA") would have understood the ordinary meaning of *tubular sleeve* as an open or hollow cylinder designed to fit over or enclose another part (i.e., an enclosure).

This meaning is consistent with the specification, which explains that embodiments of the tubular sleeve 254 are "open-cylinder-shaped." Exh. 1 at 11:40–42, *see also* Fig. 11, 16, 19 (depicting sleeve 254 as a cylindrical enclosure). The specification further distinguishes between cylindrical components and components having other shapes. For example, inserts 106*a'* and 106*b'* in plug valve 100' (Fig. 2) are described as "segments of an open hollow **cylinder** instead of the inserts 106*a*, 106*b* in FIG. 1 that are segments of an open hollow **cone**. In other words, the **conical** surfaces in FIG. 1 are replaced here with **cylindrical** surfaces." *Id.* at 4:35–40. Thus, the claimed requirement of a *tubular* sleeve should be understood to specify a *cylindrical* sleeve, as distinguished from a conical sleeve or a sleeve of another shape.

The Court should construe "Tubular sleeve" to mean an "open or hollow primarily cylindrical enclosure."

II.   **"Endless Groove"**

| Claims | Kerr's Proposed Construction | Defendants' Proposed Construction |
|--------|------------------------------|-----------------------------------|
| 1, 5, 6, 15, 18 | "a channel or recess without beginning or end" | Indefinite, or in the alternative, "an annular/concentric channel or recess" |

Vulcan's proposed construction fails to capture *the* defining aspect of the claim term, the *endless* nature of the groove, while also creating an additional limitation out of thin air. Vulcan cannot meet its burden of establishing that the specification includes a clear disavowal of claim scope in support of its inclusion of "annular/concentric." *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("To disavow claim scope, the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'"). Vulcan further weakened its proposed construction a month after proposing it—and only three days before the deadline to file opening briefs—when Vulcan abruptly changed its position to *simultaneously* propose a definite construction *and* argue that "endless groove" is indefinite. Of course, a term cannot be indefinite *and* have a construction, thus Vulcan's indefiniteness challenge fails on its face.

A.   Vulcan's Proposed Construction Contains Improper Limitations

Vulcan's "annular/concentric" limitation has no support in the claims, which recite an "endless groove" without any limitation as to the shape of the groove. The specification, which discusses an "endless groove" at 8:60 to 9:14, does not change the result. The "endless groove or recess 240" is described as being "characterized by a pair of parallel sidewalls joined by a base." There is no in-depth discussion of the groove being "annular" or ring-shaped or any other term that may suggest annular. *Id.* The specification merely states that sidewalls are joined by a base. Thus, the invention claims an endless groove in all manner of shapes, including *but not limited to* concentric shapes.

Vulcan can only point to two referenced embodiments of the invention and to drawings contained in the specification, but neither are "clear disavowal[s] of claim scope." *Retractable Techs*, 653 F.3d at 1306. First, the specification itself notes that the drawings are "merely illustrative and not limiting of the contemplated embodiments," and thus are the exact opposite of a "disavowal of claim scope." Exh. 1 at 9:6-7. As to Vulcan's two embodiment citations, those also fail to constitute a clear disavowal of claim scope. The specification describes numerous embodiments, among them: "The present invention is *also* directed to a fluid end assembly comprising … a seal positioned within an annular groove formed in the housing," Exh. 1 at 2:23-28, and "The present invention is further directed to … [a] groove [that] extends concentrically around that section," *Id.* at 2:37-39.  Even if this were the *only* embodiment of the endless groove, the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). Moreover, beginning the sentences with "The present invention is also directed to" and " and "the present invention is further directed to" makes clear that the subsequent descriptions are *not* disavowals of claim scope. *See Cont'l Circuits LLC v. Intel Corp*., 915 F.3d 788, 797 (Fed. Cir. 2019) ("[P]hrases such as 'one technique,' 'can be carried out,' and 'a way' indicate that using Probelec XB 7081 is only one method for making the invention and does not automatically lead to finding a clear disavowal of claim scope."). The specification even goes on to say, "*any shape* necessary to properly mount a desired seal is contemplated, whether the seal is elastomeric, spring, metal, and the like" may be used for the endless groove. Exh. 1 at 9:7-9 (emphasis added). The claimed invention does not limit the "endless groove" to an annular shape.

B.  Vulcan's New Indefiniteness Argument Fails.

At the eleventh hour, nearly a month after the deadline to exchange claim constructions, Vulcan now says the "endless groove" is indefinite and that Vulcan's proposed construction is an "alternative." Exh. 3. In other words, Vulcan contends the term "endless groove" simultaneously has a definite meaning while also being indefinite. Not only is Vulcan's position nonsensical, but it is further belied by the fact that Vulcan participated in the claim construction process—by serving proposed constructions and conferring on them—for over a month without noticing the alleged indefinite nature of "endless groove." And even after the alleged indefinite nature had supposedly become clear, Vulcan still asks this Court to recognize its own proposed construction. Vulcan therefore cannot show that this claim term "read in light of the specification, fails to inform, with reasonably certainty, those skilled in the art about the scope of the invention" because Vulcan itself recognizes the term supports a definite construction, albeit one Kerr disputes. *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 2124 (2014).

Vulcan pins its indefiniteness argument on the fact that a *different* patent examiner assigned to a patent application from a *different* family than the '070 erroneously concluded that the word "endless" was indefinite. The '414 application Vulcan cites does not have a single application in common with the '070 patent. And most importantly, Vulcan ignores the fact that the patent examiner assigned to the '070 patent in *this* case had no indefiniteness concerns over the term "endless groove." And the '070 examiner got it exactly right. The examiner for the unrelated '414 patent stated that "endless" is an indefinite term because a *structure* cannot be endless. But the word "endless" modifies a groove within a structure, not the structure itself. Indeed, any child who has played with a hula hoop knows that a shape can be without a beginning or an end. While Kerr subsequently amended the unrelated patent application, it did not agree with the examiner's conclusion and made the amendment only to accelerate the patent's issuance. This inconsistent

7

treatment of "endless groove" by different examiners is a great example of why the Federal Circuit has cautioned courts from using the prosecution history—here, from a different patent—to resolve claim construction disputes. *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 796 (Fed. Cir. 2019) ("We have cautioned, however, that 'because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes.'").

Kerr asks this Court to construe "endless groove" as "a channel or recess without beginning or end." The specification makes clear throughout that "groove" refers to a "channel" or a "recess." *See, e.g.*, Exh. 1 at 10:5, 10: 18, 10:28, 11:4. While groove has a particular meaning in the art, "endless" has an obvious plain and ordinary meaning: without a beginning or an end. It cannot be more straightforward. This is especially true considering that the person of ordinary skill in this case would have significant experience or knowledge in the field of fluid end design and manufacturing. *See Source Search Techs., LLC v. LendingTree,* LLC, 588 F.3d 1063, 1077 (Fed. Cir. 2009) (noting that "this court measures indefiniteness according to an objective measure that recognizes artisans of ordinary skill are not mindless automatons") (quotations omitted).

### III.   <u>"Therethrough"</u>

| Claims | Kerr's Proposed Construction | Defendants' Proposed Construction |
|--------|------------------------------|-----------------------------------|
| 1, 6 | "from one side or surface to the opposing side or surface" | "into (the housing)" |

Vulcan's proposed construction is at odds with the plain meaning of the term and dispenses with a key aspect of the invention, the requirement that there actually be two separate conduits extending through the housing. Stating that a conduit extends into a housing is very different from stating that a conduit extends *through* a housing. Vulcan's construction has no basis in any intrinsic or extrinsic evidence and was clearly selected to enable Vulcan to shoehorn disclosures lacking

the claimed conduits to read on the claims. For example, in the Y-bore fluid end of US patent 6,382,940, only the first conduit (suction/discharge) extends through the housing. The plunger bore only has a single opening and only extends into the housing, not through it:



Figure 5

Recognizing the logical flaws in its proposed construction, Vulcan argues Kerr acquiesced to the construction even if it does not make sense. Vulcan claims the examiner read the first and second conduits on the conduits of the Y-bore fluid end of Blume '940, and asserts (without analysis) that Kerr acquiesced to this as an implicit construction. Pet., 31-32. But Vulcan's evidence falls far below what is required for acquiescence.

To show Kerr acquiesced to the examiner's characterization, Vulcan must demonstrate that Kerr clearly and unambiguously disclaimed the term's plain and ordinary meaning. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003); *see also Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016). "A patentee is not required to fight tooth and nail every possibly adverse thought an examiner commits to paper." *TorPharm, Inc. v. Ranbaxy Pharm., Inc*., 336 F.3d 1322, 1330 (Fed. Cir. 2003). Importantly, an applicant's silence

in response to an examiner's characterization of a claim does not, as a matter of law, reflect a "clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization." *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-74 (Fed. Cir. 2003); *see also Salazar v. Proctor & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005) ("Consequently, an applicant's silence regarding statements made by the examiner during prosecution, without more, cannot amount to a 'clear and unmistakable disavowal' of claim scope."); *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corporation*, 841 F.3d 1334, 1341 (Fed. Cir. 2016) ("[A]n examiner's unilateral statement does not give rise to a clear disavowal of claim scope by the applicant.").

Here, the file history shows Kerr argued that the rejected claims were not anticipated because the prior art asserted by the examiner did not disclose packing seals disposed within the sleeve. Exh. 4 at 10-11. Kerr remained silent as to the examiner's characterization of *therethrough*, and the claims were ultimately allowed on unrelated grounds. *See id.* at 7. As a matter of law, Kerr did not acquiesce to the examiner's application of Blume '940 to the first and second conduits. *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-74 (Fed. Cir. 2003) (holding silence in response to an examiner's characterization of a claim does not, as a matter of law, reflect a "clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization"). Moreover, Vulcan is required to show a clear and unambiguous disclaimer by the patentee. How does Vulcan try to establish an alleged clear and unambiguous disclaimer? Vulcan provides the Court with a single unclear and ambiguous "see generally" citation. Vulcan Brief at 9 ("*See generally* Herman Ex.2 at 38-51."). Neither the Examiner nor Kerr ever addressed the term "therethrough," so it cannot qualify as a clear and unmistakable acquiescence.

10

Finally, Vulcan throws out a half-hearted indefiniteness argument, which it discloses for the first time in its opening brief. Like its "endless groove" argument, Vulcan maintains that "therethrough" has a definite meaning *and* lacks a definite meaning. Even more problematic, Vulcan's argument depends on the POSITA lacking all common sense and reading comprehension. Vulcan reads "therethrough" in isolation and contends a POSITA would have no way of knowing which surface the conduit extends through. But that is not the standard. "[T]his court measures indefiniteness according to an objective measure that recognizes artisans of ordinary skill are not mindless automatons." *Source Search Techs., LLC v. LendingTree,* LLC, 588 F.3d 1063, 1077 (Fed. Cir. 2009). And the properly skilled POSITA would reach an understanding of the term "after reading the entire patent." *ICU Medical, Inc. v. Alaris Medical Systems, Inc*., 558 F.3d 1368, 1375 (Fed. Cir. 2009).

The term "therethrough" appears only in claims 1 and 6, where it describes the first and second conduits extending therethrough the housing. The descriptions of these conduits in the specification starts with respect to the prior art (Fig. 9), which shows first conduit 220 (blue) and second conduit 221 (red) extending completely through housing 201, and intersecting to form internal chamber 222:



PRIOR ART
FIG. 9

Exh. 1 at 7:19–30; Fig. 9 (annotated above). First conduit 220 has first section 223 and second section 224 on opposite sides of internal chamber 222; second conduit 221 also has two sections, 225 and 226. These conduit sections "independently interconnect" internal chamber 222 to the fluid end's external surface. Thus, both first and second conduits extend from the fluid end's external surface on one side through the housing and open to the opposite side. The reason such conduits extend completely through the housing is to enable construction, installation and maintenance of the internal components of the fluid end.

The specification next discusses these conduits with respect to the embodiment of Fig. 11. Manifold body 232 forms "interconnected bores or conduits" including a first conduit (also referenced as the discharge bore) 234. *Id.* at 8:27–48. The first conduit "defines an intake opening 231 formed opposite the discharge opening 235." *Id*. The second conduit is collectively formed by suction bore 247 and plunger bore 252. *Id*. at 8:27–48 and 10:4–9; see Fig. 11 (annotated) below. The prosecution history does not further define therethrough.

12

Unlike Vulcan's person of underwhelming skill in the art, a POSITA would read the entire patent and understand "therethrough" means from one side or surface to the other. Therethrough is not a term of art. "Therethrough" is normally defined as simply "through" (it or that), and that is how a POSITA would understand it absent some reason to modify the definition. The disclosure of the '070 Patent shows all conduits proceeding from one side of the housing, completely through the housing, and to the other side; not merely "into" the housing.

IV.    **"Within the Sleeve"**

| Claims | Kerr's Proposed Construction | Defendants' Proposed Construction |
|--------|------------------------------|-----------------------------------|
| 1, 6 | No construction necessary; plain and ordinary meaning applies. | "bounded by an inner surface of the sleeve" |

The term "within the sleeve" is a term that jurors will readily understand given the context of the claim language. Claim 6 recites, *inter alia*, "a plurality of packing seals disposed within the sleeve." The specification discusses packing seals with respect to FIG. 9 (a prior art figure), stating that a plunger 228 "is disposed within a plurality of packing seals 219." *Id.* at 7:35–36. With respect to FIG. 17, the specification states, "the plunger 228 and packing seals 219 … may be disposed within the stuffing box sleeve 254."

Vulcan's proposed construction does not serve to make the claim term easier to understand. "Within the sleeve" is not a confusing term. Vulcan already seeks a construction on the term "sleeve" so construing "within the sleeve" only serves to define the word "within." In drafting the patent claims, Kerr did not attempt to become its own lexicographer by using an unusual definition of the word "within." Nothing in the specification suggests Kerr employed "within" to mean anything other than "inside," a word jurors readily understand. Therefore, "within the sleeve" does not require a construction. *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373 (Fed. Cir.

2004) (no construction is required for "ordinary, simple English words whose meaning is clear and unquestionable").

Vulcan's proposed construction also improperly injects an unrelated concept by using the term "bounded." The specification does not say anything about "bounded" sleeves. Vulcan has created the term out of whole cloth, which is entirely improper given that an item being "within" another item is not at all the same as an item being *bound to* another item.

Vulcan repeats this error in arguing Kerr somehow acquiesced to this "bounded" construction. Vulcan Brief at 16. Neither the examiner nor Kerr once used the word "bounded." The examiner erroneously suggested the Blume '940 reference anticipated the '070 patent because he misunderstood figures in the '940 and '070 application. *See, e.g.*, Exh. 5 at 4-5; Exh. 4 at 10 ("The Examiner cited the 'seal' as one of the packing seals, and the 'tubular sleeve' as the packing brass."). The examiner contended that the Blume reference disclosed packing seals "disposed within" the packing brass in the same way that Kerr's invention discloses packing seals disposed within the sleeve. Exh. 5 at 4-5. In response, Kerr explained to the examiner that he had incorrectly identified the placement of the packing seals in the Blume reference. Exh. 4 at 10-11. The figure below shows a cross-section from the Blume reference, with the packing brass in yellow and the packing seals in turquoise. Since this is a cross-section, portions of each are omitted. In three dimensions, the top and bottom yellow packing brass "squares" actually form a ring and the plunger is "within" the packing brass rings. Two red arrows have been added to highlight the area "within" the packing brass rings; the turquoise seals are clearly not within either packing brass ring.



Kerr explained to the examiner that the seals are *outside* of, but sandwiched between, the packing brass rings. *Id.* It is akin to the difference between wearing two wedding bands on your finger and holding a wedding band on each side of your finger.

From there, Vulcan takes a *massive* leap on logic. Vulcan contends that by explaining to the examiner the '070 requires the seals to be within the sleeve, Kerr agreed to a define the seals' exact configuration and placement within the sleeve. Vulcan Brief at 16 ("Thus, Kerr argued that the packing seals must be bounded by an inner surface of the sleeve in order to be "within the sleeve.").  Kerr said nothing of the sort. Indeed, Vulcan's logic is akin to guessing that a wedding band is tight on all sides simply because someone says they tried on a wedding band. Just because you say you are wearing a ring on your finger does not indicate at all how loose or tight that ring is. Yet that is how Vulcan would have this Court read the prosecution history for the '070 patent. Vulcan's staggering speculation is far from a "clear disavowal of claim scope." *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("To disavow claim scope, the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'").

There is no need to construe "within the sleeve" and there is certainly no basis to transform the term from describing a location inside a sleeve into a term requiring binding directly against the sleeve.

## V.   "The seal is engaged with the outer surface of the sleeve"

| Claims | Kerr's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| 23 | No construction necessary; plain and ordinary meaning applies. | "the seal in the groove in the housing contacts the outer surface of the sleeve" |

Vulcan proposes a construction for the limitation "the seal is engaged with the outer surface of the sleeve" even though each word is easily understood by a juror and the combination of words does not create an unusual meaning. Not only is the claim language easily understood, but Vulcan's proposed construction does not functionally differ from the original claim language. "The seal is engaged with the" does not technically differ from "the seal in the groove in the housing contacts the." Therefore, there is no dispute about the claim's technical meaning. Instead, Vulcan is wordsmithing the patent's language post-issuance. Claim construction is improper where there is no dispute about the *technical* scope of the claim language. *C.f. U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution **of disputed meanings and technical scope**, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.") (emphasis added); *see also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("[Claim construction] is not an obligatory exercise in redundancy.").

Vulcan argues that its proposed construction should be adopted because Kerr agreed to another one of Vulcan's proposed constructions on a different term: "at least a portion of the sleeve engages with the seal." Vulcan initially indicated it would be asking the Court to construe an absurd **14** terms for one patent. Exh. 6. Vulcan's constructions for many of those terms were entirely unnecessary. In order to make Vulcan's set of terms more manageable for this Court, Kerr agreed to two of the unnecessary constructions. However, it is improper for Vulcan to use Kerr's

goodwill as a basis to add even *more* unnecessary constructions to overcomplicate issues for the jury.

Vulcan seeks only to increase the number of terms with which the jury will be presented, but that is not a proper basis to wordsmith and deviate from the plain and ordinary meaning of straightforward claim language about which there is no technical dispute.

## VI.    "Seal"

| Claims | Kerr's Proposed Construction | Defendants' Proposed Construction |
|--------|------------------------------|-----------------------------------|
| 1, 6, 11, 16, 19, and 23 | No construction necessary; plain and ordinary meaning applies. | "annular component of elastomeric, spring, metal, or similar material that presses tightly against a surface upon axial and/or radial compression" |

This Court does not need to construe the term "seal," a non-technical term that lay jurors will readily understand. No construction is necessary. *Chef Am.*, 358 F.3d at 1373 (no construction is required for "ordinary, simple English words whose meaning is clear and unquestionable"); *ConocoPhillips Co. v. In-Depth Compressive Seismic, Inc.*, 2019 WL1877374, at *5 (S.D. Tex. Apr. 26, 2019) (holding that claim term was "sufficiently clear to make even resort to a dictionary unnecessary" where "[n]either party has argued the existence of a customary meaning in the art that differs from or contradicts the plain and ordinary meaning stated by the plaintiff" and nothing "in either the specification or the prosecution history clearly support the defendant's contention that the plaintiff intended to use the term [] in a manner other than according to its plain and ordinary meaning").

Vulcan's proposal to include "annular" as a new limitation is not supported by the evidence. The specification mentions several different types of seals that can be used in various embodiments. For example, although radial seals are illustrated in certain drawing figures, alternative embodiments may employ other types of constructions such as "axial seals, crush seals, and the like." Nowhere does the specification limit the seal to an "annular" construction, as

proposed by Defendants. Indeed, the specification states that "any shape necessary to properly mount a desired seal is contemplated, whether the seal is elastomeric, spring, metal, and the like." Exh. 1 at 9:7-9. While annular seals are described in the patent, such a description is only present when discussing prior art. Ex. 1 at 5:10–17, describing the use of "annular seal" 140 with respect to prior art (*see Id.* at 2:60–67, describing Figures 1 through 3 as being "previously attempted solutions").

## VII.   "Closure Element"

| Claims | Kerr's Proposed Construction | Defendants' Proposed Construction |
|--------|------------------------------|-----------------------------------|
| 7, 8 | "a component that is attached or otherwise joined to a housing to help provide a fluid seal between the housing and the component, such as but not limited to the discharge plug, suction plug, discharge valve seat, suction valve seat, stuffing box sleeve, discharge flange, suction manifold, and the like" | "a component that is attached or otherwise joined to a housing to provide a fluid seal between the housing and the component" |

While "closure element" is not defined in the specification, "closure" is defined. From 11:67 to 12:24, the '070 Patent lays out multiple definitions for the term "closure." Vulcan, however, has latched onto a single definition from the specification to the exclusion of all others. *See* Exh. 1 at 11:67-12:4. During the meet and confer process, Kerr indicated it would agree to Vulcan's proposed construction if Vulcan would agree to fold in language from the other "closure" definitions in order to provide the jury with a more complete definition that reflected a POSITA's understanding after reviewing the patent as a whole. Vulcan rejected the proposal.

Vulcan points to the following language in the specification to support its proposed construction: "For purposes of this description and meaning of the claims the term 'closure' means a component that is attached or otherwise joined to the body to provide a high-pressure fluid seal between the body and the closure." Exh. 1 at 11:67-12:4. Vulcan omits the next twelve lines of the

18

specification expounding on the definition of "closure": "In some embodiments such as the described valve embodiments 'closure' encompasses a moving component that is selectively positionable to control the fluid flow through the valve, such as the plug described and other components such as but not limited to a wedge, a clapper, a ball, a segment, and the like. In some embodiments such as the described fluid end embodiments 'closure' encompasses nonmoving components joined to the body to seal an opening such as but not limited to the discharge plug, suction plug, discharge valve seat, suction valve seat, stuffing box sleeve, discharge flange, suction manifold, and the like." *Id.* at 12:4-12:16.

Vulcan's proposed construction should be combined with additional language from the specification so it accurately reflects all three definitions of "closure." Claim terms must be construed in light of the entire patent rather than individual portions read in isolation. *See ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368, 1375 (Fed. Cir. 2009) ("Indeed, the court should focus on how such a person would understand the claim term **after reading the entire patent**.") (emphasis added). When read in isolation, Vulcan's proposed construction could create the misimpression that the closure element is the mechanism that creates the seal with the housing by stating, "to provide a high-pressure fluid seal between the body and the closure." The remaining definitions make clear that the closure element assists *other* elements to create the seal, which would be clear to a POSITA after reading the remaining definitions in the specification. Rather than offer a cumbersome and lengthy construction restating all three definitions, Kerr proposes that the word "help" be added before the word "provide" and the list of exemplar embodiments from the third "closure" definition be included so that the relationship between the closure element and the seal is clearer.

In sum, Kerr asks the Court to adopt the following construction for "closure element": "a component that is attached or otherwise joined to a housing to help provide a fluid seal between the housing and the component, such as but not limited to the discharge plug, suction plug, discharge valve seat, suction valve seat, stuffing box sleeve, discharge flange, suction manifold, and the like."

## VIII.   <u>"Fluid end assembly"</u>

| Claims | Kerr's Proposed Construction | Defendants' Proposed Construction |
|--------|------------------------------|-----------------------------------|
| 1 – 24 | No construction necessary; plain and ordinary meaning applies. | This clause is part of the preamble and gives no patentable weight to the claimed invention |

Vulcan attempts to use the claim construction process as a vehicle to obtain what amounts to an advisory opinion. Kerr's claim charts and infringement contentions do not rely on the term "fluid end assembly" and Kerr is not seeking a construction for "fluid end assembly." Yet Vulcan asks this Court for a ruling that "fluid end assembly" has no patentable weight. There is no reason for the Court to make such a ruling, therefore Vulcan's request is entirely improper. *In re CSB-Sys. Int'l, Inc*., 832 F.3d 1335, 1342–43 (Fed. Cir. 2016) ("Without a 'fundamental dispute regarding the scope' of this term, construction is not necessary."); *EmeraChem Holdings, LLC v. Volkswagen Group of Am., Inc.*, 714 F. App'x 995, 996 (Fed. Cir. 2017) ("Claim terms, however, are construed to resolve a 'controversy, and only to the extent necessary to resolve the controversy.'").

## <u>Conclusion</u>

This Court should reject Vulcan's proposed constructions.

Dated: October 29, 2020        By: _/s/ Brian D. Melton_____

                        Brian D. Melton (Texas 24010620)
                        Daniel A. Wilson (Texas 24070859)
                        Rocco Magni (Texas 24092745)
                        Thomas V. DelRosario (Texas 24110645)
                        (_pro hac vice_)
                        SUSMAN GODFREY LLP
                        1000 Louisiana Street, Suite 5100
                        Houston, Texas 77002
                        Tel: (713) 651-9366
                        Fax: (713) 654-6666
                        bmelton@susmangodfrey.com
                        dwilson@susmangodfrey.com
                        rmagni@susmangodfrey.com
                        tdelrosario@susmangodfrey.com

**COUNSEL FOR KERR MACHINE CO.**

## CERTIFICATE OF SERVICE

I certify that all counsel of record deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

                        _/s/ Brian D. Melton_____
                        Brian D. Melton